BANISADR BUILDING JOINT VENTURE, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 94–41C.

United States Court of Federal Claims.

June 11, 1997.

George R. Sparling, Lexington Park, MD, for plaintiff. Kenney, Lacer, Sparling, Densford & Reynolds, P.A., of counsel.

William P. Donovan, Jr., Department of Justice, Washington, DC, with whom was Assistant Attorney General Frank W. Hun-

ger, for defendant. David M. Cohen, Director; and Joseph A. Kijewski, Assistant Director, of counsel.

## OPINION

FUTEY, Judge.

This case is before the court on defendant's motion for summary judgment. Defendant contends that no genuine issues of material fact are in dispute and defendant is entitled to judgment as a matter of law. Plaintiff argues, however, that genuine issues of material fact exist and defendant's motion should be denied.

### Factual Background

On January 23, 1970, defendant and Gulf Reston, Inc., entered into a lease regarding the subject property, which consists of approximately eleven acres of land. In addition, an office building and computer facility were built to meet the special requirements of defendant. Possession and the term of the lease, which contained a restoration clause, commenced on March 1, 1971. In 1976, plaintiff acquired the subject property from Gulf Reston and was recognized as the successor lessor of the subject property.

During defendant's occupancy of the subject property, alterations were made to, and improvements installed at, the buildings located on the subject property. Plaintiff approved these changes. The parties agree that defendant paid the cost of the alterations it requested. From 1976 until 1991, defendant paid rent to plaintiff on the subject property. The lease expired on February 28, 1991. Thereafter, from 1991 to 1994, defendant compensated plaintiff for its three-year condemnation of the subject property.[1] On February 28, 1994, defendant quit possession of the subject property.

On February 22, 1995, plaintiff contracted to sell the subject property to the County of Fairfax, Virginia (Fairfax County).[2] Fairfax County purchased the subject property in-

---

1. On October 29, 1991, defendant initiated a partial condemnation proceeding in federal district court. The condemnation proceedings resulted in a compensation award for plaintiff.

2. Plaintiff had previously sold slightly less than one acre of the subject property to Fairfax County in 1983.

tending to demolish the buildings. Plaintiff was aware of this intent at the time of the sale. The subject property was conveyed to Fairfax County on July 12, 1995. The buildings located on the subject property were subsequently destroyed. It is undisputed that plaintiff did not spend any money on restoration costs between the time defendant quit possession of the subject property and the date Fairfax County purchased the subject property.

Plaintiff filed its complaint in this court on January 24, 1994. In the complaint, plaintiff alleges that defendant breached its express contract, the lease, with plaintiff by failing to restore the subject property to the same condition as existed when the lease was entered into in 1970. Based upon this alleged breach, plaintiff claims monetary damages in the amount of $2,667,687 as the diminution in fair market value of the subject property due to defendant's failure to restore. Plaintiff also requests attorney fees, costs, and any other relief the court may award.

On December 6, 1996, defendant filed a motion for summary judgment in which defendant asserts that there is no dispute as to any genuine issue of material fact and plaintiff's claim must fail as a matter of law. Plaintiff maintains that a trial is required on the matter of its entitlement to the requested relief. The court heard oral argument on defendant's motion on April 16, 1997.

## Discussion

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56; *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). A fact is considered material if it might significantly affect the outcome of the suit under the governing law. *Anderson*, 477

U.S. at 248, 106 S.Ct. at 2510. The party moving for summary judgment bears the initial burden of demonstrating, by a preponderance of the evidence, either the absence of any genuine issue of material fact or the absence of evidence to support the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). If the moving party demonstrates an absence of genuine issues of material fact, the burden then shifts to the non-moving party to show that a genuine factual dispute exists. *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1563 (Fed.Cir.1987). Alternatively, if the moving party shows an absence of evidence to support the non-moving party's case, the burden shifts to the non-moving party to proffer such evidence. *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2553–54. The court must resolve any doubts over factual issues in favor of the party opposing summary judgment, *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 163 (Fed.Cir.1985), to whom the benefits of all presumptions and inferences run. *H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1574 (Fed.Cir.1984), *cert. denied*, 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

In the present case, although plaintiff takes issue with some of defendant's proposed findings of fact, such disagreement does not raise any genuine issues of material fact. Indeed, plaintiff's factual arguments deal more with the semantics of defendant's proposed findings rather than their content. All facts that might significantly affect the outcome of the present suit are undisputed. The court therefore may properly resolve this case on defendant's motion for summary judgment and need only consider whether plaintiff is entitled, as a matter of law, to the damages it seeks.[3] *See Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2509–10.

---

**3.** Regarding the appropriate date upon which defendant's obligation to restore the subject property arose, defendant agrees that, for purposes of its motion for summary judgment, the court may utilize the February 28, 1991, date suggested by plaintiff. Transcript (Tr.) at 9–10. The court therefore considers the parties arguments on this matter *arguendo*. Upon expiration of the lease term in February 1991, defendant

exercised its lawful right to condemnation and retained possession of the subject property until February 1994, which defendant maintains should be the operative date. As defendant pointed out during oral argument, requiring restoration before defendant vacated the subject property would lead to "two rounds of restoration". *Id.* at 9. Such a result is unwarranted. For purposes of restoration, plaintiff's legitimate

It is well-settled that, "[w]here there has been a breach of an obligation to restore leased premises to the original condition, [a] plaintiff is entitled to recover the damages [it] actually suffers." *San Nicolas v. United States*, 223 Ct.Cl. 223, 617 F.2d 246, 249 (1980). Generally, such damages are measured by the cost of restoration. *Id.* When, however, the cost of restoration exceeds the diminution in fair market value of the premises, damages are limited to the diminution in fair market value caused by the defendant's breach. *Dodge St. Bldg. Corp. v. United States*, 169 Ct.Cl. 496, 341 F.2d 641, 644 (1965); *see also San Nicolas*, 617 F.2d at 249; *Missouri Baptist Hosp. v. United States*, 213 Ct.Cl. 505, 555 F.2d 290, 294–95 (1977); *Navajo Tribe of Indians v. United States*, 9 Cl.Ct. 336, 410 n. 69 (1986). The purpose of this measure-of-damages rule is the avoidance of windfall recoveries. *Missouri*, 555 F.2d at 294.

Further, in seeking any recovery, the plaintiff "has the burden to establish by a preponderance of the evidence that the fair market value of the property in the condition which the defendant had covenanted to restore it was greater than the property's fair market value in an unrestored state at the termination of the lease." *San Nicolas*, 617 F.2d at 249. Applying this rule to the present case, it is clear that plaintiff, in order to recover for the alleged diminution in fair market value of the subject property, must show that it suffered actual damages, *i.e.*, that the fair market value of the subject property was diminished as a result of defendant's actions. *See Realty Assocs., Inc. v. United States*, 134 Ct.Cl. 167, 138 F.Supp. 875, 877 (1956). In attempting to make this requisite showing, plaintiff relies upon two expert reports. Defendant argues that the analysis in plaintiff's reports is flawed and does not warrant the recovery sought by plaintiff. In addition, defendant asserts that

the deposition testimony of plaintiff's experts actually supports defendant's position.[4]

The purpose of plaintiff's first expert report, prepared by Mr. John Warren (Warren report), was to calculate the cost of restoring the buildings located on the subject property to their April 1, 1970, configuration. As Mr. Warren indicated at his deposition, however, his figures were not limited to restoration costs. Rather, his cost calculations were based upon an estimate of the amount of money that would need to be expended in order to make the buildings attractive to a potential new tenant. In addition, his estimate did not discount normal wear and tear, which were to be specifically excluded from any amounts to be paid by defendant under the lease's restoration clause. Mr. Warren's analysis also factored in compliance with building codes that were more stringent than those in existence in 1970. Similarly, the calculations were based upon 1990, not 1970, materials and technology. In that regard, Mr. Warren stated that he did not have the capability to determine the cost of conforming the buildings to their 1970 configuration with 1970 materials and technology. At his deposition, Mr. Warren further agreed that, in some instances, plaintiff therefore would be "getting something that is better than the original."[5]

It is also important to note that the costs outlined in the Warren report are estimates, not actual costs. Indeed, plaintiff incurred no actual restoration costs and, in the present action, is seeking reimbursement for the alleged diminution in fair market value of the subject property allegedly due to defendant's failure to restore. It is, therefore, in the diminution-in-fair-market-value-context that the court must consider defendant's concerns regarding the Warren report. Such attention is especially warranted in light of the fact that the second report, in offering an estimate as to the alleged diminution in fair

interest in the subject property began in February 1994 when defendant was legally required to, and in fact did, surrender possession of the subject property to plaintiff. *See United States v. 14.54 Acres of Land*, 599 F.Supp. 123 (S.D.N.Y. 1984).

4. Defendant also has submitted an expert report of its own, which concludes that the fair market value of the subject property was not diminished due to defendant's actions.

5. Deposition Testimony of John Warren (Excerpts), Defendant's Motion for Summary Judgment, Appendix at 14.

market value of the subject property, relies solely upon the Warren report's calculation of restoration costs.

More specifically, the second report, prepared by Mr. Fredric Lauterbach (Lauterbach report), discusses two scenarios and then compares the two in arriving at an estimated diminution-in-fair-market-value-figure. The first scenario considered in the Lauterbach report assumes that a payment of approximately $2.6 million in restoration costs, the estimate stated in the Warren report, had been made by defendant to plaintiff. While the second scenario assumes no such payment, all other inputs, such as per-square-foot market rent, remain constant. Mr. Lauterbach then subtracts the second scenario from the first, and concludes that the diminution in fair market value of the subject property, due to defendant's actions, equals $2,667,687 as of March 1, 1991.

Further, because the Lauterbach report relies upon the numbers stated in the Warren report, the above-mentioned concerns regarding the Warren report also raise questions as to the correctness of the analysis used to arrive at the diminution-in-fair-market-value figure arrived at in the Lauterbach report.[6] Moreover, the Lauterbach report shows nothing more than the fact that payment by defendant of the estimated "restoration re-imbursement" would have provided an input benefit to plaintiff equal to that amount. This conclusion, however, does not demonstrate that the fair market value of the subject property was decreased by defendant's failure to make such a payment. Rather, the Lauterbach report, using the restoration cost figure derived from the Warren report, simply states that the subject property would have had a higher market value had those costs been added to the base value of the subject property.

■ "In an action for breach of contract, as opposed to a suit sounding in specific performance, the lessor is entitled only to the damages that were caused to the property by the failure to restore." *Dodge*, 341 F.2d at 644. The Lauterbach report does not show any such damage to the subject property.

Moreover, the Lauterbach report simply calculates the diminution in fair market value as the difference between the alleged value of the subject property with restoration costs added and its alleged value without the addition of such costs. Beyond making this comparison, plaintiff does not attempt to show that the fair market value of the subject property was diminished due to the actions of defendant. Thus, plaintiff has not met its burden of showing, by a preponderance of the evidence, that "the fair market value of the property in the condition which the defendant had covenanted to restore it was greater than the property's fair market value in an unrestored state at the termination of the lease." *San Nicolas*, 617 F.2d at 249. Absent such proof, plaintiff cannot prevail on its action. *See Realty*, 138 F.Supp. at 877.

This determination is not altered by the fact that the Court of Claims concluded that the plaintiff in *San Nicolas* had carried his burden of proof on the diminution issue by providing a comparison of the property value, as of the date of termination of the lease, in both a restored and an unrestored state. *San Nicolas*, 617 F.2d at 252. In *San Nicolas*, additional elements, which are absent here, also existed. Namely, the plaintiff's appraisal report was based upon the market data approach to value. *Id.* at 250. In addition, the plaintiff's appraisal report in *San Nicolas* indicated that any purchaser of the property would have required a price deduction to cure the defect caused by defendant's failure to restore the property. *Id.* at 252. Plaintiff in the present case makes no such allegations.

Finally, plaintiff has not demonstrated that it suffered any actual monetary damages due to defendant's failure to restore the subject property to its 1970 condition. In fact, it is undisputed that plaintiff sold the subject property to Fairfax County with the understanding that the buildings located thereon were to be demolished. Based upon that express intent, it is clear that Fairfax County would have had no interest in the restored or unrestored condition of the buildings at the time of the purchase.

---

**6.** It should be noted that the Lauterbach report, while relying upon the base figures in the Warren report, employs a lower restoration cost estimate than did the Warren report. *Id.* at 53.

This figure was calculated by deducting certain items that the Lauterbach report indicates were improperly included in the Warren report estimate. *Id.*

Even if, as plaintiff asserts, Fairfax County's intent at the time of purchase is irrelevant to plaintiff's right of recovery, plaintiff has proffered no evidence to indicate that it could have obtained a higher price for the subject property had the buildings been restored by defendant. Importantly, the Lauterbach report assumes that the per-square-foot market rent of the subject property would have remained unchanged even had restoration occurred. As defendant indicated at oral argument, the fact that plaintiff's own expert utilized the same per-square-foot market rent in calculating the value of the subject property, with and without restoration, proves defendant's case.[7] The use of the same square-foot value in the two calculations shows that any alleged failure to restore by defendant did not diminish the market value of the subject property. In sum, because no actual damages have been proved, plaintiff is not entitled to the recovery it seeks. *See Realty,* 138 F.Supp. at 877.

### Conclusion

For the foregoing reasons, defendant's motion for summary judgment is granted. Accordingly, the Clerk is directed to dismiss plaintiff's complaint. No costs.

IT IS SO ORDERED.