WDC WEST CARTHAGE ASSOCIATES, WDC Carthage Associates, WDC Gouverneur Associates, and WDC Lowville Associates, Plaintiffs–Appellants,

v.

UNITED STATES, Defendant–Appellee.

No. 02–5147.

United States Court of Appeals, Federal Circuit.

April 7, 2003.

Fernando Santiago, Davidson, Fink, Cook, Kelly & Galbraith, LLP, of Rochester, NY, argued for plaintiffs-appellants. With him on the brief was Thomas A. Fink.

John N. Kane, Jr., Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Robert D. McCallum, Jr., Assistant Attorney General; and Donald E. Kinner, Assistant Director. Of counsel was David M. Cohen, Director. Of counsel on the brief was James E. Mercer, Assistant District Counsel, U.S. Army Corps of Engineers.

Before MAYER, Chief Judge,
MICHEL, and PROST, Circuit Judges.

PROST, Circuit Judge.

WDC West Carthage Associates, WDC Carthage Associates, WDC Gouverneur Associates, and WDC Lowville Associates (collectively "Carthage Associates") appeal from the decision of the United States Court of Federal Claims denying their motion and granting the government's cross-motion for summary judgment on contract interpretation. *WDC W. Carthage Assocs. v. United States,* No. 00–622C, (Fed.Cl. May 30, 2002). Because we conclude that the plain language of the contracts entitles Carthage Associates to relief, we reverse.

I

In December 1987, Carthage Associates entered into four separate lease agreements with the government providing for the lease and management of residential off-base military housing units in Fort Drum, New York. The leases are identical and the term of each is for twenty years. Under the lease agreements, Carthage Associates is responsible for maintenance, repair, and replacement of carpeting, including the replacement of carpeting when it is no longer usable due to "normal wear and tear," and when the government, or its occupant, causes damage to the carpet "beyond normal wear and tear."[1] Lease Section C.1.

The relevant lease provisions state as follows:

*Damages Caused by Occupants:*

Damages to a housing unit or to other improvements within the project which are beyond normal wear and tear and are caused by the Government or an occupant, his dependents, or invited guests, which are not corrected by Government or occupant, shall be repaired by the Developer. *The cost of such repairs* shall be billed to the Government. . . . Repair of damages which occur to the units or other improvements

---

1. The government contends that carpeting has a limited useful life of approximately seven years, while Carthage Associates informed the government in October 1991 that it would replace carpeting after a 90 month cycle has elapsed. This apparent disagreement is not, however, relevant to the disposition of this case.

that cannot be attributed to the Government, his agents, officers, occupants, their dependents, or invited guests, shall be accomplished by the Developer at no cost to the Government.

Section C.1.s. (emphasis added).

*List of Repair Costs:*

The Developer shall, with the approval of the Government, establish a list of cleaning and repair costs for dwelling unit components which will establish the normal maximum amounts *to be charged* in the event of damage to property and equipment installed within a living unit over and above normal wear and tear.

Section C.1.t (emphasis added).

After executing the leases, Carthage Associates followed the procedure set forth for submitting, pursuant to government work authorizations, invoices necessary for reimbursement for replacing carpeting as a result of occupant-caused damage "beyond normal wear and tear." Initially the government paid charges for replacement carpeting at Carthage Associates' full invoiced price, without prorating the charged amounts for depreciation due to normal wear and tear. However, in March 1992, the government notified Carthage Associates by letter that replacing occupant-damaged carpet solely at the government's expense "is no longer acceptable effective March 15, 1992." The letter further stated that all carpet replaced would be prorated based on the schedule provided.

Carthage Associates filed an action in October 2000 asserting breach of contract and seeking damages associated with the costs of replacing carpeting at the Fort Drum housing units through approximately 1999 and subsequently moved for summary judgment on liability. The government cross-moved for summary judgment on the same issue. The Court of Federal Claims granted the government's motion and denied Carthage Associates' motion, holding that the reimbursable "cost of such repairs" associated with replacing carpet is necessarily limited to the depreciated value of the existing carpet before it is damaged.

Carthage Associates filed a timely appeal and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## II

The issue in this appeal is whether "cost of such repairs," as used in lease provision C.1.s., means the full cost of replacing damaged carpeting or whether it is limited to the depreciated value of the carpeting. Carthage Associates contends that the leases provide that if any damage "beyond normal wear and tear" occurs to the housing units at issue, such damage can either be: (1) corrected by the government itself, or (2) repaired by Carthage Associates at cost. With regard to the latter, Carthage Associates maintains that the plain terms of the subject leases provide that the full cost of repairs, without any depreciation, shall be billed to the government if Carthage Associates makes the repairs. It further contends that the parties agreed to a "List of Repair Costs," setting the maximum amounts that can be charged for the repairs and covering the full costs of repairs. Lastly, Carthage Associates maintains that the government's course of conduct confirms that it initially agreed that it was obligated to reimburse Carthage Associates for the full costs of replacing damaged carpeting, and to the extent a latent ambiguity exists with regard to the language of the leases, that ambiguity should be construed against the government as drafter of the leases.

The government counters that the plain terms of section C.1.s. merely memorialize landlord-tenant law by dividing the responsibilities for damages such that Carthage

Associates is solely responsible for any damage not caused by the government, such as "normal wear and tear," while the government is responsible for damage "beyond normal wear and tear." The government contends that lease section C.1.t. "suggests" that Carthage Associates must account for depreciation as part of reimbursable expenses because this provision defines "maximum" amounts to be charged as those "over and above" "normal wear and tear" and that the "List of Repair Costs" simply sets the maximum. Thus, in the government's view, Carthage Associates is entitled to only the depreciated value of the replaced carpeting due to occupant-caused damage before the end of the carpet's normal useful life cycle. According to the government, legal precedent establishes that whenever a tenant expressly or impliedly covenants to reimburse a landlord for "cost of repair" associated with damage to property, such repair costs are capped at the diminution in fair market value of the damaged property after accounting for "normal wear and tear." The government further argues that interpreting the leases such that it is responsible for reimbursing Carthage Associates the full costs of replacing carpet before the end of its normal useful life gives Carthage Associates an economic windfall and thus leads to an absurd result. Lastly, the government disputes that the parties' course of conduct confirms that the government was responsible for full costs of replacement and that there is a latent ambiguity in the leases.

Granting the government's motion for summary judgment, the Court of Federal Claims concluded that the "cost of such repairs" as used in the subject lease provision has a well understood meaning in landlord-tenant law, and that pursuant to that language the government's liability for the replacement of occupant-damaged carpeting is limited to the depreciated value of such carpeting.

### III

■ This court reviews contract interpretation without deference. *Metric Constructors, Inc. v. NASA,* 169 F.3d 747, 751 (Fed.Cir.1999). We conclude that the Court of Federal Claims erred in deciding that the lease language "the cost of such repairs" is limited by the diminution in fair market value of carpet caused by the occupant after accounting for "normal wear and tear" damages. In so doing, we reject the court's reliance on a line of cases in landlord-tenant law, such as *Missouri Baptist Hospital v. United States,* 213 Ct. Cl. 505, 555 F.2d 290 (1977), that in our judgment is not dispositive of the present case. The issue in *Missouri Baptist* was whether, pursuant to the government's obligation as tenant to return the leased premises to the lessor in good condition, the government could be held liable for the lessor's claimed costs of repair absent any evidence establishing that the property actually had been diminished in value by the amount of the claimed costs due to the government's conduct. *Id.* at 293–94. The court held that repair costs are limited to the diminution in fair market value attributable to defendant's breach reasoning that a lessor's cost of repair cannot exceed the diminution in property value that the tenant's damage has occasioned. *Id.* at 294–95; *see also Container Co. v. United States,* 116 Ct.Cl. 706, 90 F.Supp. 689, 693 (1950) (stating the amount of damages for which defendant is liable to its lessor are measured by the reproduction cost of the destroyed part of the building less 40% depreciation).

We disagree with the Court of Federal Claims that the result in these cases governs the instant appeal. There was no dispute in these cases that a breach of

contract had occurred and thus the sole issue in each case was the amount of damages to which the landlord was entitled due to the tenant's breach. These cases therefore determined the amount of damages for which a tenant is responsible when he or she breaches a contract by damaging leased property and by failing, upon termination of a lease, to return leased property in the condition that existed at the outset of the lease. Thus, in marked contrast to the instant case, the cases relied upon by the Court of Federal Claims were not concerned with interpreting contract language, and certainly did not construe the lease language "the cost of such repairs" at issue here. They are, therefore, not relevant to the issue presented in this case, which necessitates interpreting that language.

We rely instead on the plain terms of the subject leases. *Foley Co. v. United States*, 11 F.3d 1032, 1034 (Fed.Cir.1993) (stating that contract interpretation begins with plain language of agreement). The clear and precise terms of lease provision C.1.s. provide that "damages ... beyond normal wear and tear" caused by the government or occupant are triggering events that give rise to two options: (1) the government can make the repair itself, in which case no costs are incurred by Carthage Associates, or (2) the government can direct Carthage Associates to make the repair, in which case "the cost of such repairs" is billed to the government. Although the government argues that the references in lease provisions C.1.s. and C.1.t. to "beyond normal wear and tear" mean that it is only responsible for the depreciated value of the carpeting, in our view that language refers to the type of damages that must be repaired either by the government or Carthage Associates, not to the costs Carthage Associates must bill the government or the costs the government must pay. Notably, the govern-

ment also has not pointed to any other lease provision that uses the term "depreciation" or "proration," and there was no evidence presented to the Court of Federal Claims that the contract language "the cost of such repairs" has a conventional and accepted meaning when used in a lease that requires depreciation. While the government contends that failure to account for depreciation results in an economic windfall to Carthage Associates, it is not this court's duty to rewrite the terms of the leases agreed to by the parties because one of those terms benefits Carthage Associates, under circumstances caused entirely by the conduct of the government.

We also note the parties' past conduct in upholding Carthage Associates' interpretation of the subject leases. *See Chase & Rice, Inc. v. United States*, 173 Ct.Cl. 740, 354 F.2d 318, 321 (1965) (stating that interpretation of contract by the parties before contract becomes the subject of controversy is deemed to be of great, if not controlling weight). In this regard, the record shows that the government initially adopted Carthage Associates' interpretation of the subject leases by reimbursing Carthage Associates the full amount of replacement costs relating to occupant-damaged carpeting, which were based on the amount of payments on the last approved "List of Repair Costs." The government asserts that it first raised the issue of "carpet depreciation" and attached a depreciation schedule in January 1989, and that its delay in raising the matter was justified because depreciation only became relevant after the two-year mark from the 1987 execution of the leases. The government's expressed reason for the delay, however, does not explain why the government did not put its depreciation schedule into effect until March 1992, more than four years after the lease agreements

were executed. Moreover, when it did begin reimbursing Carthage Associates for only the depreciated value of replaced carpeting, it did not cite to any contract language to support its change in position. Indeed, the government's March 1992 letter stated that "effective March 15, 1992," replacing occupant-damaged carpet solely at the government's expense *"is no longer acceptable."* (emphasis added).

 In sum, we conclude that under the plain language of the agreements, and in particular lease section C.1.s., the government is responsible for reimbursing Carthage Associates the full costs of replacing carpeting due to damages which are caused by the government and are "beyond normal wear and tear." [2]

## CONCLUSION

We conclude that the government is responsible for reimbursing Carthage Associates the full amount of costs for replacing carpeting due to damages caused by the government and which are "beyond normal wear and tear." Accordingly, we reverse the decision of the Court of Federal Claims granting summary judgment to the government and denying summary judgment to Carthage Associates. We remand the case to the Court of Federal Claims for it to determine consistent with this opinion the amount of damages to which Carthage Associates is entitled.

*REVERSED AND REMANDED.*

2. In any event, even if one were to accept the government's interpretation of the leases as a reasonable alternative interpretation, the result would be a latent ambiguity in the contract language. *See Metric Constructors,* 169 F.3d at 751 (stating that a contract is ambiguous if it is susceptible to more than one reasonable interpretation). As such, it is well established that the rule of contra proferen-

COSTS

Costs to be awarded to the appellants.

tem requires that such ambiguity be construed against the government as the drafter of the subject leases. *Id.; see also Edward R. Marden Corp. v. United States,* 803 F.2d 701, 705 (Fed.Cir.1986) (stating that where contractor seeks relief based on his interpretation of ambiguous contract he must establish that he relied on this interpretation in submitting his bid).