**GRAND ACADIAN, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 07–849 C.

United States Court of Federal Claims.

July 6, 2010.

---

28. AR 1091.

Howell Roger Riggs, Huntsville, AL, for plaintiff. Patrick O. Miller, Huntsville, AL, of counsel.

Douglas G. Edelschick, with whom were Mark A. Melnick, Assistant Director, Jeanne E. Davidson, Director, and Tony West, Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant. Jean Hardin, Federal Emergency Management Agency, General Law Division, Washington, DC, of counsel.

## OPINION AND ORDER

HEWITT, Chief Judge.

Before the court are Defendant's Motion for Reconsideration (defendant's Motion or Def.'s Mot.), Docket Number (Dkt. No.) 70, filed on April 29, 2010; Plaintiff's Response in Opposition to [Defendant's] Motion for Reconsideration (plaintiff's Response or Pl.'s Resp.), Dkt. No. 72, filed on May 13, 2010; and Defendant's Reply in Support of Motion for Reconsideration (defendant's Reply or Def.'s Reply), Dkt. No. 73, filed on May 18, 2010.

Defendant moves the court for reconsideration of the court's May 29, 2009 Opinion, *Grand Acadian, Inc. v. United States* (*Grand Acadian* or *Opinion*), 87 Fed.Cl. 193 (2009). Def.'s Mot. 1. In *Grand Acadian,* this court evaluated cross-claims for summary judgment with respect to whether the United States, acting through the Federal Emergency Management Agency (defendant or FEMA or government or United States) breached a lease agreement with Grand Acadian, Inc. (plaintiff or Grand Acadian). In denying-in-part and granting-in-part each of the cross-motions, the court made four key determinations: (1) that the United States had no contractual duty to build any infrastructure on the leased premises, *Grand Acadian,* 87 Fed.Cl. at 207; (2) that the United States had a contractual duty to re-

store the leased property, at the termination of the lease, to its pre-lease condition, *id.* at 209; (3) that summary judgment as to whether the United States breached its duty to restore the property was inappropriate because genuine issues of material fact exist with respect to the condition of the property at both the commencement and the termination of the lease, *id.* at 213; and (4) that, if the conditions at the commencement and termination of the lease—which shall be determined at trial—"show that restoration is required, plaintiff is entitled to damages for the cost of that restoration," *id.* at 216. Defendant asks the court to reconsider only this fourth determination, the standard for calculating damages articulated in the Opinion. For the following reasons, defendant's Motion is DENIED.

## I. Background

The United States requests, pursuant to Rule 54(b) of the Rules of the United States Court of Federal Claims (RCFC), that the court reconsider the portion of *Grand Acadian* in which it addressed damages. Def.'s Mot. 1. In *Grand Acadian*, the court explained three different situations concerning damages for breach of a contractual duty to restore leased property. *See Grand Acadian*, 87 Fed.Cl. at 213–16. First, the court acknowledged that, generally, " 'recovery based on the cost of [restoration] is subject to an absolute ceiling of diminution in market value.' " *Id.* at 216 (quoting *Missouri Baptist Hosp. v. United States (Missouri Baptist)*, 555 F.2d 290, 296, 213 Ct.Cl. 505 (1977) (internal citations omitted)); *see also Dodge St. Bldg. Corp. v. United States (Dodge)*, 341 F.2d 641, 644, 169 Ct.Cl. 496 (1965) (applying the diminution in fair market value rule). Second, the court explained that the diminution in market value rule has limited application in some cases, such as when the plaintiff's property is unimproved land and, consequently, the cost of restoration is essentially indistinguishable from diminution in market value. *See* 87 Fed.Cl. at 214–15 (citing *San Nicolas v. United States (San Nicolas)*, 617 F.2d 246, 249–50, 223 Ct.Cl. 223 (1980)). Finally, the court explained that, in situations where the lease specifies the type of damages that must be repaired and assigns financial responsibility for those repairs, the diminution of market value rule is inapplicable because it is not the duty of the court to rewrite the parties' lease agreement. *See* 87 Fed.Cl. at 215–16 (citing *WDC W. Carthage Assocs. v. United States (WDC)*, 324 F.3d 1359, 1360–63 (Fed. Cir.2003)). In this third situation, the express terms of the lease necessarily supersede the default diminution in market value rule. *See WDC*, 324 F.3d at 1363 (concluding "that under the plain language of the agreements . . . the government is responsible for reimbursing [plaintiff] the full costs of [restoration]").

This court concluded in its Opinion that the present situation is most closely analogous to the situation presented in *WDC*. *Grand Acadian*, 87 Fed.Cl. at 216. The United States now argues that reconsideration is appropriate because the "restoration clause in this case does not contain any language of the sort that the *WDC* court considered" but, instead, is "substantially identical to the clauses in *Dodge* and *Missouri Baptist*, which were subject to the fair market value rule." Def.'s Mot. 5. The United States also asks the court to renew its request for summary judgment, pursuant to Rule 56 of the RCFC, on the basis that "Grand Acadian presented no evidence of any diminution in the fair market value of the property." Def.'s Mot. 7.

## II. Legal Standards

### A. Reconsideration

■ The relevant portion of Rule 54(b) of the RCFC states that

any order or other decision, however designated, that adjudicates fewer than all of the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

FV RCFC 54(b). Accordingly, the court may, in its discretion, modify an interlocutory opinion on motion for reconsideration. *See id.; Yuba Natural Res., Inc. v. United States*

*(Yuba)*, 904 F.2d 1577, 1583 (Fed.Cir.1990) ("The decision whether to grant reconsideration lies largely within the discretion of the district court."). "A motion for reconsideration is not intended, however, to give an 'unhappy litigant an additional chance to sway' the court." *Matthews v. United States*, 73 Fed.Cl. 524, 525 (2006) (quoting *Froudi v. United States*, 22 Cl.Ct. 290, 300 (1991)). Rather, a motion for reconsideration may be granted "upon the showing of satisfactory evidence, cumulative or otherwise, that any fraud, wrong, or injustice has been done to the United States." RCFC 59(a)(1)(C).[1]

### B. Summary Judgment

 Under Rule 56 of the RCFC, "[a] motion for summary judgment should be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." RCFC 56(c)(1); *Mann v. United States (Mann)*, 334 F.3d 1048, 1050 (Fed.Cir.2003). The moving party has the initial burden of establishing "the absence of any genuine issue of material fact and entitlement to judgment as a matter of law." *Crater Corp. v. Lucent Techs., Inc. (Crater Corp.)*, 255 F.3d 1361, 1366 (Fed.Cir.2001) (citing *Celotex Corp. v. Catrett (Celotex Corp.)*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).[2] In considering a motion for summary judgment, the court draws all inferences in favor of the non-moving party. *See*

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Mann*, 334 F.3d at 1050 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

### III. Application of Legal Standards to this Case

The United States argues that it has "show[n] that [*WDC*] does not support a departure from the traditional fair market value rule [in this case], because the *WDC* decision turned upon the proper interpretation of specific contract language ('the cost of such repairs shall be billed to the Government') for purposes of liability." Def.'s Reply 2 (quoting *WDC*, 324 F.3d at 1360). Plaintiff asserts that "the [g]overnment misunderstands and misapplies *WDC* in its advocacy for reconsideration." Pl.'s Resp. 5. The United States is correct in saying that *WDC* turned on the interpretation of specific contract language. The court in *WDC* distinguished *Missouri Baptist* and similar cases applying the diminution in market value rule on the grounds that "in marked contrast to [*WDC*], [such cases] were not concerned with interpreting contract language" because the restoration clauses in those contracts did not contain any language assigning the full cost of restoration to the lessee. *See WDC*, 324 F.3d at 1363. Rather, those clauses simply created a duty to restore the property, leaving the court to determine only "the

---

1. The United States asserts that "[t]he rules governing motions respecting final judgments, [Rules of the United States Court of Federal Claims (RCFC)] 59, 60, do not apply to interlocutory decisions." Def.'s Mot. 3 n. 2 (citing *Fla. Power & Light Co. v. United States (Fla.Power)*, 66 Fed.Cl. 93, 95–97 (2005) (concluding that a "non-final order may be revisited and reassessed under the more flexible standards of the 'law of the case' ")). Unlike Rule 59 of the Federal Rules of Civil Procedure (FRCP), however, RCFC 59 addresses reconsideration of both final judgments and interlocutory matters. *See Fla. Power*, 66 Fed.Cl. at 94 (explaining that the "strict standards governing motions to reconsider under Rule 59 of the [FRCP] do not apply to motions to reconsider interlocutory matters under Rules 54 and 59 of the [RCFC]"); *see also* RCFC 59 rules committee notes (2002) (listing difference retained after RCFC 59 was amended to follow more closely FRCP 59, including "the distinction

between final and non-final orders, which can be the subject of motions of reconsideration at any time before final judgment").

2. The RCFC generally mirror the FRCP. RCFC 56 rules committee notes (2002) ("The subdivision structure of RCFC 56 was reordered to more closely conform to FRCP 56."); *see Champagne v. United States*, 35 Fed.Cl. 198, 205 n. 5 (1996) ("In general, the rules of this court are closely patterned on the [FRCP]. Therefore, precedent under the [FRCP] is relevant to interpreting the rules of this court, including Rule 56."); *see also C. Sanchez & Son, Inc. v. United States*, 6 F.3d 1539, 1541 n. 2 (Fed.Cir.1993) ("The [RCFC] generally follow the [FRCP]. [RCFC] 56(c) is, in pertinent part, identical to [FRCP] 56(c)."). Therefore, this court relies on cases interpreting FRCP 56 as well as those interpreting RCFC 56.

amount of damages for which a tenant is responsible when he or she breaches [this duty]." *See id.*

The court finds that the situation in this case is analogous to that in *WDC,* which rejected the diminution in market value rule based on the plain language of the agreement. *See WDC,* 324 F.3d at 1364. In *WDC,* the terms of the lease provided, "Damages ... which are beyond normal wear and tear and ... which are not corrected by Government or occupant, shall be repaired by the Developer. *The cost of such repairs shall be billed to the Government." WDC,* 324 F.3d at 1360 (quoting from lease, emphasis added in the *WDC* opinion). The court held that the terms of the lease required the government to pay the full cost of restoration rather than the diminution of market value. *Id.* at 1364. This interpretation was based on the facts that the government "ha[d] not pointed to any other lease provision that uses the term 'depreciation' ... and there was no evidence presented ... that the contract language 'the cost of such repairs' has a conventional and accepted meaning when used in a lease that requires depreciation." *Id.* at 1363. The court also noted that the past conduct of the parties supported its interpretation of the lease. *Id.*

██ Similarly, in *Grand Acadian,* this court explained that damages in the present case-if the evidence to be presented at trial shows that the United States breached its duty to restore the leased premises to their pre-lease condition-are also a matter of contract interpretation. *See Grand Acadian,* 87 Fed.Cl. at 216 ("The [l]ease requires defendant to restore the [p]roperty to its condition at the commencement of the [l]ease, 'normal wear excepted.'"). In reaching this conclusion, the court looked to the plain language

of paragraph six of the Lease Rider[3], which allows Grand Acadian to "require that the [g]overnment ... restore the premises to the condition existing at the lease commencement date," and clearly states that such restoration will be "at the [g]overnment's expense." Lease Rider ¶6; *see Grand Acadian,* 87 Fed.Cl. at 216. Because the plain language of the lease requires that such damages be remedied "at the [g]overnment's expense," Lease Rider ¶6, the court concluded that, here, as in *WDC,* "if the proven conditions at the beginning and the termination of the [l]ease term show that restoration is required, plaintiff is entitled to damages for the cost of restoration." *Grand Acadian,* 87 Fed.Cl. at 216; cf. *WDC,* 324 F.3d at 1364 ("While the government contends that failure to account for depreciation results in an economic windfall to [plaintiff], it is not this court's duty to rewrite the terms of the leases agreed to by the parties because one of those terms benefits [plaintiff], under circumstances caused entirely by the conduct of the government.").[4] Therefore in the present case, as in *WDC,* the diminution in market value rule is irrelevant to the question of damages, because the terms of the lease agreement clearly establish that, should restoration be required as a result of "the conduct of the government," the government is contractually obligated to pay the full cost. *See id.* at 1364.

However, the United States "submit[s] that *Dodge* and *Missouri Baptist* are controlling and the fair market value rule should guide the [c]ourt's legal analysis" of damages, Def.'s Reply 1, because "the restoration clause in this case is substantially identical to the clauses in *Dodge* and *Missouri Baptist,*" Def.'s Mot. 5. Grand Acadian argues that,

**3.** The parties submitted the terms of their lease agreement, including a standard lease form and attachments incorporated into the lease by reference, with Defendant's Proposed Findings of Uncontroverted Fact in Support of Rule 56 Motion for Summary Judgment (defendant's Facts or Def.'s Facts), Docket Number (Dkt. No.) 33, filed December 1, 2008, and plaintiff's Proposed Findings of Uncontroverted Fact (plaintiff's Facts or Pl.'s Facts), Dkt. No. 35, filed December 1, 2008, respectively. See Def.'s Facts, Exhibit (Ex.) 3, at 1–47; Pl.'s Facts, Ex. D, at 1–47. These materials, as submitted by the parties, are identical.

The court refers to pages three through six of the lease materials as the Lease Rider. Paragraph 6 appears on the sixth page of the lease materials.

**4.** Of course, it is also a question of fact—not yet determined in this case—whether, as in *WDC W. Carthage Associates v. United States,* there exists "circumstances caused entirely by the conduct of the government." Cf. *WDC W. Carthage Assocs. v. United States,* 324 F.3d 1359, 1364 (Fed.Cir. 2003).

even if the court were to apply the diminution in fair market value rule, such a rule would have little effect in the context of undeveloped property. Pl.'s Resp. 6 (citing *San Nicolas*, 223 Ct.Cl. 223, 617 F.2d 246). The court does not consider whether the diminution of market value rule would have little effect, as in *San Nicolas*, because the restoration clause in this case differs significantly from those in *Dodge* and *Missouri Baptist*, making *WDC*, rather than the diminution in fair market value rule, the correct standard.

In both *Dodge* and *Missouri Baptist*, the language of the lease created a duty to restore the property but did not assign the full cost of restoration to the leasing party. *See WDC*, 324 F.3d at 1362–63 (distinguishing *Missouri Baptist* and other similar cases). In *Dodge*, the lease included "a clause obligating the defendant upon termination of the lease to restore the premises to the condition existing at the beginning of the lease, except for ordinary wear and tear and damages by the elements or circumstances beyond the [g]overnment's control. A special proviso limited the restoration to partitions, plumbing and electrical wiring at [certain locations]." *Dodge*, 341 F.2d at 643. The restoration clause in *Missouri Baptist* provided, "Lessee hereby accepts the premises in the condition they are in at the beginning of this lease and ... will deliver the leased premises to the Lessor in good condition ... excepting only reasonable wear and tear...." *See Missouri Baptist*, 555 F.2d at 293 n. 5.[5] These clauses do not include language similar to the clauses in *WDC* and in the present case, each of which expressly provides that the government will pay for the cost of restoration. *See WDC*, 324 F.3d at 1360 (quoting lease provision that "[t]he cost of such repairs shall be billed to the [g]overnment") (emphasis omitted); *Lease Rider* ¶ 6 (stating that Grand Acadian may require the government to restore the leased property "at the [g]overnment's expense").

 Nonetheless, even if the court were persuaded by the government's argument in favor of the diminution in market value rule, it would decline to grant defendant's Motion in the current posture of the case. *See* RCFC 54(b); *Yuba*, 904 F.2d at 1583 (explaining that deciding whether to grant a motion for reconsideration is largely within the court's discretion). Because the parties still dispute material facts, specifically, the condition of the property at the beginning and termination of the lease, *see Grand Acadian*, 87 Fed.Cl. at 210–13, summary judgment is inappropriate, *see* RCFC 56(c)(1) (stating that summary judgment is appropriate if there is "no genuine issue as to any material fact"); *Mann*, 334 F.3d at 1050. Although the United States argues that summary judgment is appropriate because "Grand Acadian presented no evidence of any diminution in the fair market value of the property," Def.'s Mot. 7, Grand Acadian has presented evidence concerning the condition of the property—a prerequisite to determining its value—which the court decided "would be better presented through live testimony subject to cross-examination," *see Grand Acadian*, 87 Fed.Cl. at 213. The United States has not met its burden of establishing the lack of any genuine issue of material fact. *See Crater Corp.*, 255 F.3d at 1366 (citing *Celotex Corp.*, 477 U.S. at 322–24, 106 S.Ct. 2548).

Of course, the court may later revisit the 2009 Opinion with regard to damages. *See* RCFC 54(b). At this juncture, however, it remains disputed whether the United States has breached its duty to restore the property and, consequently, whether any damages will be awarded. Accordingly, the court finds that its Opinion results in no wrong or injustice to the United States. *See* RCFC 59(a)(1)(C).

## IV. Conclusion

For the foregoing reasons, defendant's Motion is DENIED.

IT IS SO ORDERED.

---

5. The restoration clause in *San Nicolas v. United States*, 617 F.2d 246, 249, 223 Ct.Cl. 223 (1980), similarly "obligated defendant to 'restore the premises to the same conditions as that existing at the time of entering this lease, reasonable wear and tear by the elements excepted.'"